IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERNEST PRIOVOLOS, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-2155 |
| | : | |
| MONTGOMERY COUNTY DISTRICT, | : | |
| ATTORNEY OFFICE OF | : | |
| PENNSYLVANIA, *et al.*, | : | |
|     Defendants. | : | |

<u>MEMORANDUM</u>

**MCHUGH, J.**                                                                                     **JUNE 30, 2025**

Plaintiff Ernest Priovolos has filed a *pro se* Complaint asserting claims pursuant to 42 U.S.C. § 1983 against the Montgomery County District Attorney's Office, District Attorney Steele, and Detective Karl Molt. Priovolos also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Priovolos leave to proceed *in forma pauperis* and dismiss the Complaint.

**I.      FACTUAL ALLEGATIONS AND LITIGATION HISTORY**[1]

Public records reflect that on January 19, 1990, after a jury trial in the Montgomery County Court of Common Pleas, Priovolos was found guilty of murder in the third degree and related offenses. *Commonwealth v. Priovolos*, CP-46-CR-0000603-1989 (C.P. Montgomery). According to the evidence at trial:

---

[1] The factual allegations set forth in this Memorandum are taken from the Complaint ("Compl.") (ECF No. 2) and publicly available dockets of which this Court may take judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006); *see also In re Ellerbe*, No. 21-3003, 2022 WL 444261, at *1 (3d Cir. Feb. 14, 2022) (*per curiam*) (citing *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988) (holding that court may take judicial notice of the record from previous court proceedings)). The Court adopts the sequential pagination assigned by the CM/ECF docketing system. Quotes from *pro se* documents will be corrected for punctuation, spelling and capitalization as needed.

> Priovolos met Ms. Succa on the night of October 22, 1986, while he was delivering pizza. Succa was riding her bicycle and was inebriated. Priovolos took her to a motel and unsuccessfully attempted to engage in intercourse with Succa, who passed out.
>
> Succa spent the next day with Priovolos at his mother's house, and later that evening Priovolos drove her to a secluded area in another attempt to engage in intercourse with her. When Succa refused Priovolos' advances, an argument ensued, and Priovolos grabbed Succa's purse to retrieve the money he had spent on the hotel room the previous evening. Priovolos slapped Succa during the struggle and she began crying. She ran from Priovolos' car and onto a bridge, but Priovolos caught up with her, repeatedly striking her, and finally knocking her from the bridge. Succa fell to her death, and Priovolos dragged the body underneath the bridge, where it was found two days later by a groundskeeper.

*Commonwealth v. Priovolos*, 715 A.2d 420, 421 n.1 (Pa. 1998).

On January 28, 1991, Priovolos was sentenced to an aggregate term of imprisonment of twelve to twenty-seven years. *Id*. at 421; *Priovolos*, CP-46-CR-0000603-1989. On direct appeal, the Superior Court of Pennsylvania affirmed the conviction and judgment of sentence, and the Pennsylvania Supreme Court denied Priovolos leave to appeal. *See Commonwealth v. Priovolos*, 609 A.2d 585 (Pa. Super. 1992) (unpublished memorandum), *appeal denied*, 617 A.2d 1273 (Pa. 1992). Since 1992, Priovolos has filed at least eight petitions pursuant to the Pennsylvania's Post Conviction Relief Act ("PCRA"), none of which have warranted relief. *See Priovolos*, CP-46-CR-0000603-1989. In this court, he has filed numerous civil rights actions, and also unsuccessfully sought *habeas* relief. *See Priovolos v. Meyers*, No. 99-6571 at ECF No. 12 (E.D. Pa. May 9, 2000), *denying cert. of appealability*, No. 00-1756 (3d Cir. Mar. 23, 2001); *see also*, *Priovolos v. Commonwealth of Pennsylvania*, No. 19-3695 at ECF No. 4 (E.D. Pa. Sept. 13, 2019) (dismissing second or successive petition for writ of *habeas corpus*). Several of the actions Priovolos has brought alleged claims related to the failure to obtain DNA testing on biological evidence and disclose discovery related to that evidence. The crux of Priovolos's

claims in the instant action is likewise that his constitutional rights have been violated by the Defendants' failure to provide post-conviction DNA testing. (*See* Compl. at 2-3, 5.)

The public record in *Priovolos v. Montgomery County District Attorney Office, et al.,* brought in this court, provides relevant background to the issues raised here. 2018 WL 925020 (E.D. Pa. Feb. 16, 2018) ("*Priovolos I*").[2] The *Priovolos I* Court explained that after Priovolos's judgment of sentence became final on February 20, 1993:

> By Order dated November 19, 2002, the Honorable Calvin S. Drayer of the Montgomery County Court of Common Pleas granted a motion by Priovolos to test the victim's bloodstained clothing as well as a light-brown hair discovered thereon for DNA. Evidence admitted at a subsequent hearing established that the hair was discarded and the victim's panties were lost. However, at Priovolos's request, the victim's shirt, jacket and vest were submitted to National Medical Services for testing. Testing revealed that the stains on the victim's jacket and vest were "not blood, or are blood that has been aged or degraded beyond the limits of the test method utilized." The only test that could provide a result revealed that a stain on the outside right sleeve of the jacket was female blood.
>
> Priovolos filed a Petition for a Rule to Show Cause in the Post-Conviction Relief Act (PCRA) court in January 2007 to request production of documents and evidence for and concerning DNA testing. By Order dated March 20, 2007, the PCRA court granted the relief requested but refused to order that a female member of the victim's family provide Priovolos with a DNA sample. [footnote omitted.] The Commonwealth and other law enforcement agencies complied with the PCRA court's March 20, 2007 Order. But Priovolos evidently did not act to advance his interests until 2012, when, with counsel, he filed another PCRA petition[.]

*Id*. at *1-2 (citations omitted).

The *Priovolos I* Court then summarized Priovolos's PCRA petition history, resulting in seven petitions at that time, which unsuccessfully attacked, *inter alia,* matters surrounding the post-conviction DNA testing and discovery. *Id*. at *2-3. For instance, on February 27, 2017, the Pennsylvania Superior Court affirmed the dismissal of Priovolos's fifth PCRA petition as time-barred because "he did not file a PCRA petition within the requisite 60-day period under the

---

[2] The Court will also refer to the CM/ECF docket of *Priovolos I*, which is Civil Action No. 17-985.

PCRA." *Id*. at *3. The Pennsylvania Supreme Court denied Priovolos's request to appeal that decision on July 19, 2017. *Id.* Despite the pending litigation in state court, he filed *Priovolos I* in federal court on March 13, 2017, again raising the issue of the production of the DNA evidence relative to his 1990 conviction and sought to collaterally attack his conviction and judgment of sentence. *Id.* at *3. Specifically, he alleged due process violations against Defendants Montgomery County District Attorney's Office ("MCDAO"), District Attorney ("DA") Steele, Detective Molt, and others for "the non-compliance of the procedural orders," and not requiring a family member of Succa, the victim, to produce a DNA swab. *Id*. He claimed the MCDAO violated state court orders in preventing him from obtaining evidence regarding DNA testing. *Id.* at *7. He sought injunctive relief in the form of an order directing the MCDAO to comply with Judge Drayer's Order issued in 2007 and requiring a DNA swab from a female member of Succa's family. *Id*. at *3. He also alleged that 42 Pa. Cons. Stat. § 9543.1 "should be strictly reinforced by this federal court." *Id.* On February 16, 2018, the *Priovolos I* Court granted the Defendants' motion to dismiss, finding that Priovolos's § 1983 claims were barred by both the two-year statute of limitations and the *Rooker-Feldman* Doctrine, and otherwise failed to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). *Id*. at *4-6. Priovolos subsequently filed a notice of appeal, which was dismissed for failure to timely prosecute.[3] *Priovolos I,* No. 17-986 at ECF Nos. 31, 34.

---

[3] Priovolos also brought a case in 2015, pursuant to the Federal Tort Claims Act, based on allegations that he should have been excluded as a blood source, which was dismissed due to his failure to exhaust administrative remedies. *Priovolos v. Fed. Bureau of Investigation*, 686 F. App'x 150, 151 (3d Cir. 2017) (*per curiam*) ("Relying on the expert's report, Priovolos filed a complaint under the FTCA against the FBI and two of its laboratory employees. Priovolos alleged that the 'falsified laboratory reports' resulted in infliction of emotional distress and false imprisonment.").

Shortly after the *Priovolos I* Court's decision, the Pennsylvania Superior Court affirmed the denial of Priovolos's petition filed for post-conviction DNA testing under Pennsylvania's statute, 42 Pa. Cons. Stat. § 9543.1. *See Commonwealth v. Priovolos*, 2018 WL 4062314, at *1 (Pa. Super. Ct. Aug. 27, 2018). The Court concluded that he was not eligible for post-conviction DNA testing under 42 Pa. Cons. Stat. § 9543.1, nor did he file a proper petition under that statute. *Id*. at *2.

In the instant action, Priovolos again asserts due process claims related to the DNA evidence, claiming that Defendants have had DNA evidence since April 20, 2004, which will eliminate him as a suspect in his underlying murder conviction. (Compl. at 2-3.) He names the MCDAO, DA Steele, and Detective Karl Molt as Defendants. (*Id*. at 2.) He discusses that his family hired attorneys in 2023, who have prepared a sixty-page legal brief incorporating new facts relevant to his case, including a statement from a Ms. Hall that she was instructed by her husband, John Hall, to falsely testify in his trial.[4] (*Id*. at 3, 5.) He contends that the legal brief

---

[4] The Court cannot discern a viable claim from the allegation that John Hall instructed his wife to falsely testify in Priovolos's trial. Priovolos does not identify John Hall or explain his connection to this case. Regardless, even had the prosecutor obtained his conviction based on perjury in violation of his due process rights, this claim would fail. Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus," rather than a § 1983 action. *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (*per curiam*); *see also Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.").. A corollary of this principle is that a § 1983 plaintiff may not recover "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless he "prove[s] that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote and citation omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation) — no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) — if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)). "A claim . . . bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Heck*, 512 U.S. at 487 (emphasis in original).

was given to DA Steele and shows as of September 1, 2024, he is eliminated as a suspect from the murder case. (*Id*. at 5.) He claims a blood expert would further support that he has "been eliminated." (*Id*. at 6.) As a result of these events, he alleges that DA Steele has obstructed justice and seeks money damages. (*Id*. at 4, 7, 13.)

## II.   STANDARD OF REVIEW

The Court grants Priovolos leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[5] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021),

---

Since this claim challenges the very fact of Priovolos's conviction, it is a claim seeking *habeas* relief that is not cognizable as a § 1983 claim. *See Long v. Atl. City Police Dep't*, 670 F.3d 436, 447 (3d Cir. 2012) (*Heck* barred claim that "defendants conspired to obtain a capital murder conviction against [plaintiff]" including by committing perjury and fabricating evidence); *Humphries v. Houghton*, 442 F. App'x 626, 629 (3d Cir. 2011) (*per curiam*) ("Humphries' claims that defendants used perjury and false evidence to secure his federal conviction are not cognizable under *Heck's* favorable termination rule.").

[5] It appears Priovolos has completed his term of imprisonment for his underlying conviction as he lists a residential address in Warrington, Pennsylvania. (*See* Compl. at 1.)

*abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

Because Priovolos is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

### III.  DISCUSSION

Because Priovolos has raised the same due process claims in his prior lawsuits related to post-conviction DNA testing and obstruction of justice for preventing him from obtaining evidence from such testing,[6] he may not raise them again. These claims were raised in *Priovolos*

---

[6] Priovolos's Complaint can also be understood to allege that the prosecution failed to turn over exculpatory evidence during discovery that could have proved his innocence. (*See* Compl. at 5; *see also Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment"). To the extent this specific claim was not explicitly resolved in the prior lawsuit, it still fails because it falls within the core of *habeas corpus* because it attacks the validity of his convictions. *See Skinner v. Switzer*, 562 U.S. 521, 536 (2011) ("Brady claims have ranked within the traditional core of habeas corpus and outside the province of § 1983."); *Heck*, 512 U.S. at 490 (claim that prosecutors and an investigator had "'knowingly destroyed' evidence 'which was exculpatory in nature and could have proved [petitioner's] innocence'" cannot be maintained under § 1983). "[W]henever a plaintiff pleads a violation of § 1983 and effectively seeks habeas relief, the plaintiff fails to state a § 1983 claim. Instead, the prisoner's only federal remedy is through a writ of habeas corpus after exhausting state remedies." *Garrett v. Murphy*, 17 F.4th 419, 430 (3d Cir. 2021). Accordingly, Priovolos cannot state a § 1983 claim

*I* against each of the Defendants here, specifically the MCDAO, DA Steele, and Detective Molt, and were dismissed against them as barred by both the two-year statute of limitations and the *Rooker-Feldman* Doctrine, and otherwise failed to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). *Priovolos I*, 2018 WL 925020 at *4-6. These claims are now barred by the doctrine of claim preclusion. This doctrine, also called *res judicata*, protects defendants from the risk of repetitious suits involving the same cause of action once a court of competent jurisdiction has entered a final judgment on the merits." *Beasley v. Howard*, 14 F.4th 226, 231 (3d Cir. 2021) (internal quotations omitted). Claim preclusion prevents parties from raising issues that could have been raised and decided in a prior case regardless of whether those issues were litigated. *Id.* In other words, "[t]he prior judgment's preclusive effect . . . extends not only to the claims that the plaintiff brought in the first action, but also to any claims the plaintiff could have asserted in the previous lawsuit." *Id.* at 231-32. "Claim preclusion similarly reaches theories of recovery: a plaintiff who asserts a different theory of recovery in a separate lawsuit cannot avoid claim preclusion when the events underlying the two suits are essentially the same." *Id.* at 232; *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 261 (3d Cir. 2010) ("'Rather than resting on the specific legal theory invoked, res judicata generally is thought to turn on the *essential similarity* of the underlying events giving rise to the various legal claims.'") (quoting *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983-84 (3d Cir. 1984)).

Three elements are required for claim preclusion to apply: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Marmon Coal Co. v. Dir., Office Workers' Compensation*

---

based on allegations that exculpatory evidence was not disclosed to him prior to trial or allegations of actual innocence.

*Programs*, 726 F.3d 387, 394 (3d Cir. 2013) (internal quotation marks omitted). With regard to the second element, claims against individuals who were not parties to the prior lawsuit may be precluded in certain circumstances, including when there is a substantive legal relationship between the party and nonparty. *Taylor v. Sturgell*, 553 U.S. 880, 893-94 (2008). "With respect to affirmative defenses, such as res judicata, dismissal is proper if application of the defense is apparent on the face of the complaint; [the Court] may also look beyond the complaint to public records, including judicial proceedings." *Weinberg v. Scott E. Kaplan, LLC*, 699 F. App'x 118, 120 n.3 (3d Cir. 2017); *Gimenez v. Morgan Stanley DW, Inc.*, 202 F. App'x 583, 584 (3d Cir. 2006) (*per curiam*) (observing that "*[r]es judicata* is a proper basis for dismissal under 28 U.S.C. § 1915(e)(2)(B)").

The claims against the Defendants raised and dismissed in *Priovolos I* may not be revived in a new lawsuit. The dismissal was a final judgment on the merits in the prior suit involving the same parties, and Priovolos's new claims are based on the same cause of action. Accordingly, these claims are dismissed with prejudice.

Although the entirety of his claims is difficult to understand, it is possible Priovolos could have intended to challenge the constitutionality for post-conviction DNA testing under Pennsylvania's statute, 42 Pa. Cons. Stat. § 9543.1. *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name."); *see also Gutierrez v. Saenz*, No. 23-7809, slip op. at 7 (U.S. June 26, 2025) (observing that a prisoner may file "a due process claim under §1983 against a prosecutor who refused to release biological evidence for testing") (cleaned up)). Even ignoring that *res judicata* also extends to any claims Priovolos *could have* asserted in the previous lawsuit, the merits of such a claim would still fail. As an initial matter, Priovolos makes no meaningful

9

effort to explain how, if at all, Pennsylvania's post-conviction procedures violated his due process rights. This is fatal to his claim. *See Spuck v. Pennsylvania*, 456 F. App'x 72, 73 (3d Cir. 2012) (*per curiam*) (summarily affirming dismissal of due process claims where "we discern no attempt by Spuck to explain how Pennsylvania's specific procedures for postconviction DNA testing are inadequate as a matter of federal law" (footnote omitted)); *Turner v. Dist. Att'y Philadelphia Cnty.*, No. 22-0491, 2022 WL 1568395, at *5 (E.D. Pa. May 18, 2022) ("Although he vaguely suggests that he sought evidence in an underlying PCRA proceeding, Mr. Turner provides no specific facts from which the Court could conclude that Pennsylvania's post-conviction relief procedures are fundamentally unfair or inadequate."). Further, courts have suggested that Pennsylvania's post-conviction procedures in this area do, in fact, accord with due process. *See, e.g., Young v. Philadelphia Cty. Dist. Attorney's Office,* 341 F. App'x 843, 845 (3d Cir. 2009) (*per curiam*) ("In order for Pennsylvania's procedures to violate due process, they must offend, at a minimum, some principle of justice so rooted in the traditions and conscience of our people to be ranked as fundamental, or they must transgress a recognized principle of fundamental fairness in operation. We conclude that Pennsylvania's procedures for post-conviction relief do neither.") (internal quotations and citation omitted)); *Hanson v. Lehigh Cnty. Dist. Attorney's Off.*, No. 21-3368, 2021 WL 3910741, at *7 (E.D. Pa. Sept. 1, 2021) ("Notably, other courts have found Pennsylvania's procedure to be adequate in the context of § 1983 cases filed by prisoners seeking post-conviction DNA testing."); *Wagner v. Dist. Att'y Allegheny Cty., Pa.*, No. 11-762, 2012 WL 2090093, at *10 (W.D. Pa. May 21, 2012) ("Wagner fails to make the difficult showing that the Pennsylvania DNA testing procedures as discussed above are facially invalid as they contain similar requirements and limitations imposed by other DNA-testing statutes, including the post-conviction statute upheld in *Osborne*."), *report and recommendation*

*adopted*, 2012 WL 2089799 (W.D. Pa. June 8, 2012). Accordingly, to the extent Priovolos's due process claims attempted to challenge the constitutionality of Pennsylvania's post-conviction procedures, they nevertheless fail because they are not plausible.

IV.     **CONCLUSION**

For the reasons stated above, the Court will grant Priovolos leave to proceed *in forma pauperis* and dismiss the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Leave to amend will not be given because the Court concludes that amendment would be futile under the circumstances of this case. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002). Priovolos is warned that if he continues to repeatedly pursue claims that have already been resolved and rejected, the Court will consider whether it is appropriate to limit his ability to file in the future.

An appropriate Order follows, which will dismiss this case.[7]  *See* Federal Rule of Civil Procedure 58(a).

/s/ Gerald Austin McHugh  
United States District Judge

---

[7] Because this case will be dismissed with prejudice at the statutory screening stage, the Court will deny Priovolos's Motion to Compel as moot. (ECF No. 4).